AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| United States of America<br>v.<br>CARLOS MANUEL PEREZ-LOPEZ;<br>ENRIQUE SALCEDO; and<br>ERICK MARTINEZ-SOLORIO,<br><br>*Defendant(s)* | ) ) ) ) ) ) )   Case No. |

## CRIMINAL COMPLAINT
### BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  September 13th, 2024  in the county of  Washington and elsewhere  in the  _____  District of  Oregon , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), )(b)(1)(A)(viii) and 846 | Possession with intent to distribute 500 or more grams of a substance containing methamphetamine, a Schedule II Controlled Substance, and Conspiracy to distribute controlled substances. |

This criminal complaint is based on these facts:
See attached affidavit of FBI Task Force Officer Nolan M. Hansen

☑ Continued on the attached sheet.

/s/ By Phone
*Complainant's signature*

Nolan M. Hansen, Task Force Officer, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at    3:45   a.m./p.m.

Date: September 14, 2024

/s/ Jeff Armistead
*Judge's signature*

City and state:   Portland, Oregon

JEFFREY ARMISTEAD, U.S. Magistrate Judge
*Printed name and title*

**DISTRICT OF OREGON, ss:**                               **AFFIDAVIT OF NOLAN M. HANSEN**

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Nolan M. Hansen, being duly sworn, do hereby depose and state as follows:

### Introduction and Officer Background

1. I have been employed as a Deputy Sheriff by the Washington County Sheriff's Office (WCSO) since August of 2016. I have been a sworn Task Force Officer with the Federal Bureau of Investigations (FBI) since February of 2024. My current assignment is to the Westside Interagency Narcotics (WIN) Team. Since becoming a law enforcement officer, I have received training and/or professional experience in narcotic investigations, familiarization with U.S. narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, informant development, Title III investigations, and undercover operations. During my law enforcement career, I have been involved in investigations of numerous federal and state criminal offenses. I have participated in numerous investigations of illicit drug trafficking organizations, ranging from street level dealers to major dealers. These investigations have included the use of confidential sources (CSs), and sources of information (collectively "Sources"); toll records; physical surveillances; and the execution of search warrants. These investigations have also included possession with intent to distribute, and distribution of controlled substances. These investigations have resulted in numerous state and/or federal prosecutions of individuals who have possessed, and or distributed controlled substances, as well as the seizure of those illegal drugs and the proceeds from the sale of those illegal drugs.

2.      I submit this affidavit in support of a criminal complaint and arrest warrants for the following individuals:

- **Carlos Manuel PEREZ-LOPEZ,** aka ("**PEREZ-LOPEZ**");
- **Enrique SALCEDO**, ("**SALCEDO**"), and
- **Erick MARTINEZ-SOLORIO**, ("**MARTINEZ-SOLORIO**"),

for committing the offense of possession with intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine, and conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846.

4.      This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. The recorded conversations described herein occurred in Spanish and were preliminarily transcribed from the original audio or written format to a written formant in English by specially trained Spanish speaking linguists or Spanish speaking task force officers/agents. Subsequent review of the recorded communications and the preparation of final transcripts may reflect changes from the preliminary summaries detailed herein.

## Applicable Law

3.      Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), and 846 make it illegal to possess with the intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine and to conspire to do so. Based on the facts of this investigation as alleged herein, these offenses carry a maximum penalty of 10 years to life imprisonment, a fine of $10 million, and not less than five years' supervised release.

### Statement of Probable Cause



4.

### *Background Information*

5.      Agents and officers comprising the Drug Enforcement Administration ("DEA"), Tigard Police Department ("TPD"), Washington County Sheriff's Office ("WCSO"), and Sherwood Police Department ("SPD") assigned to DEA led federal task force D-51 or the Westside Interagency Narcotics ("WIN") Team, (hereinafter collectively referred to as "Investigators") are investigating a Mexico based Drug Trafficking Organization ("DTO") with

AFFIDAVIT OF NOLAN M. HANSEN                                                                                   Page 3

cells operating in Oregon, Washington, California, and Mexico. The multi-cell organization is involved in the importation, transportation, and wholesale distribution of sizeable quantities of methamphetamine, heroin, cocaine, fentanyl, as well as associated money laundering and bulk cash smuggling activities. Per information and intelligence obtained through a cooperating source, this DTO imports bulk quantities of methamphetamine, cocaine, heroin and fentanyl from Mexico into the United States through ports of entries along the United States – Mexico international border.



6. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

7. Investigators applied for and obtained a warrant to install a tracking device on **PEREZ-LOPEZ**'s Camry signed by U.S. Magistrate Judge Jolie A. Russo on August 30, 2024 (filed: 3:24-mc-00888). In early September 2024, Investigators successfully installed the device and were tracking the device and **PEREZ-LOPEZ**'s Camry on September 13, 2024.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

8. 

9.

10. On September 13, 2024, Investigators took steps to find **PEREZ-LOPEZ** and surveil his activities. Investigators were actively tracking the location of **PEREZ-LOPEZ'S** Camry via a combination of physical surveillance and geolocation information associated with the GPS tracker affixed to **PEREZ-LOPEZ**' Camry.

11. At approximately 1:30 p.m. Investigators visually observed **PEREZ-LOPEZ** access the driver's side door, enter the car and drive **PEREZ-LOPEZ**'s Camry away. Investigators followed **PEREZ-LOPEZ**'s Camry as it left the Portland area. At approximately 2:45 p.m., Investigators noted **PEREZ-LOPEZ**'s Camry was traveling Southbound on I-5 towards Salem, Oregon.

12.     At approximately 3:40 p.m. Investigators observed **PEREZ-LOPEZ** park **PEREZ-LOPEZ'S** Camry at a truck stop near Aurora, Oregon, and meet with two Hispanic males near a blue semi-truck and white trailer bearing three license plates: on the front semi-truck: a temporary Texas plate number: 4808L18 (expires September 15, 2024); a Mexico plate number 31-ER-7B; and on the rear/trailer a Maine license plate 3327605.  **PEREZ-LOPEZ** was next to the semi-truck for approximately five minutes before he departed.  After a brief meeting, Investigators watched **PEREZ-LOPEZ** drive away in **PEREZ-LOPEZ**'s Camry and continue Northbound on I-5.

13.     Based on my training and experience I know that short stay meetings in public parking lots between a known narcotics trafficker and others is a common tactic drug traffickers use to avoid detection by law enforcement. Based on **PEREZ-LOPEZ**'s short stay meeting at the truck stop, and ███████████████████████████████████████████████, I believe **PEREZ-LOPEZ**'s meeting with the two men at the truck stop likely involved narcotics trafficking.

### *September 13, 2024: Investigators Stop PEREZ-LOPEZ and Seize Bulk Quantity of Drugs*

14.     DEA Task Force Investigators followed **PEREZ-LOPEZ'S** Camry as it travelled north in Wilsonville. Investigators initiated a traffic stop on the Camry on I-5 North and Carmen Drive in Tigard, Oregon. **PEREZ-LOPEZ** was detained, and local law enforcement officers ran a drug-detecting K9 partner around the car. The officer told me his K9 alerted to the presence of narcotics inside **PEREZ-LOPEZ'S** Camry. Having probable cause to search the mobile vehicle, Investigators searched **PEREZ-LOPEZ's** Camry for evidence of narcotics distribution.

15.     Investigators opened the trunk of **PEREZ-LOPEZ's** Camry and located a large black trash bag that was completely full. Investigators squeezed the bag gently and it felt like narcotics, specifically methamphetamine. Investigators opened the bag and found multiple sealed packages of a white substance I believe to be methamphetamine, based on my training and experience. Investigators also located a large black bag wrapped heavily in plastic. Investigators opened a portion of it and could see blue pills I believe to be counterfeit oxycodone pills containing fentanyl, based on my training and experience.

16.     During the stop, Investigators located and photographed an Oregon driver's license in his possession bearing **PEREZ-LOPEZ'S** photo, but a different name. Investigators also found other identification documents for **PEREZ-LOPEZ** during the stop. Investigators determined **PEREZ-LOPEZ's** name as used herein based on the name associated with **PEREZ-LOPEZ's** fingerprints taken during the booking process. I know that narcotics traffickers frequently use monikers or false names to avoid detection by law enforcement. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

/ / /

/ / /

/ / /

17. Below is an image of the drugs seized from **PEREZ-LOPEZ**'s Camry:



*September 13, 2024: Semi-Truck Found Abandoned and Still Running at Rest Stop*

18. Other Investigators had followed the semi-truck from the meeting with **PEREZ-LOPEZ**. Immediately following Investigators traffic stop of **PEREZ-LOPEZ's** Camry, Investigators observed the semi-truck pull into a public rest stop area along Northbound I-5 near Wilsonville, Oregon, and park.

19. At approximately 4:20 p.m. Investigators in multiple police vehicles parked along the driver's side, passenger's side, and rear areas of the semi-truck, activating their police vehicle emergency lights. Investigators approached the semi-truck in tactical gear clearly labeled "Police" in the front and back.

20. As they approached the semi-truck, Investigators noted that the vehicle's motor was still running. Investigators were unable to see through the tint of the side windows and

AFFIDAVIT OF NOLAN M. HANSEN                                                                 Page 8

unable to see the back of the cab from outside of the vehicle. Investigators verbally announced their presence in both English and Spanish and ordered any occupants to open the door. After no answer, Investigators opened the unlocked doors and searched the cab for occupants. After not finding any occupants, Investigators exited the vehicle and secured it pending a search warrant application.

21. Investigators searched the immediate area around the rest stop and located two Hispanic men, later identified as **SALCEDO** and **MARTINEZ-SOLORIO**, who were hiding in the brush less than a mile away from the rest stop. One of the men was wearing the same clothing as the man who Investigators had observed **PEREZ-LOPEZ** meeting with near the Target Vehicle at the truck stop earlier that afternoon. **SALCEDO** was located closer to the semi-truck while **MARTINEZ-SOLORIO** was located further away. **SALCEDO** was identified by a Visa Border Crossing card found on his person and **MARTINEZ-SOLORIO** was identified by a Voter Identification Card found on his person.

22. 

23. Investigators applied for and obtained a search warrant to search the semi-truck signed by U.S. Magistrate Judge Jeffrey Armistead on September 13th, 2024. Local law

AFFIDAVIT OF NOLAN M. HANSEN                                                                                     Page 9

enforcement officers ran a drug-detecting K9 partner around the semi-truck. The officer told me his K9 alerted to the presence of narcotics inside the cabin of the semi-truck. At 8:30 p.m. Investigators began the search of the semi-truck. In the sleeper area in the back of the cab Investigators located two large grey suitcases. Inside the suitcases were large packages wrapped in brown plastic wrapping consistent with bulk controlled substances.

24. Below is an image of the suitcases and packages seized from the semi-truck:



25. Investigators opened some of the brown plastic wrapping to find a white crystalline substance, which from my training and experience I believed to be methamphetamine. Three NIK tests were used on the substance inside the suitcases, each came back presumptive positive for methamphetamine. The gross weight of the methamphetamine in the brown plastic wrapping was 209.68 pounds (gross weight includes packaging materials).

AFFIDAVIT OF NOLAN M. HANSEN                                                                                  Page 10

26. Investigators used a NIK test kit on the white substance found in the trunk of the Camry, which came back presumptive positive for methamphetamine. The gross weight of the methamphetamine from the Camry in packaging was 45.08 pounds (including packaging materials). Investigators used two Detectachem tests on the pills found in the Camry, which came back negative for fentanyl. The gross weight of the pills in packaging was 777.4 grams.

27. From my training and from past drug seizures I know it is common for fentanyl products to not test presumptive positive on field test kits for the presence of fentanyl. This is because fentanyl is so potent only a small amount of fentanyl is present in the product as a whole. Binders and fillers make up the rest of the product. However, when these products are sent to the crime lab, where more sensitive tests can be conducted, the product more often than not tests positive for fentanyl.

28. ██████████████████████████████████████████████

29. ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

30. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████

31. ████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

AFFIDAVIT OF NOLAN M. HANSEN                                                                                     Page 12

[REDACTED]

### Conclusion

32.     Based on the foregoing, I have probable cause to believe, and I do believe, that **PEREZ-LOPEZ**, **MARTINEZ-SOLORIO**, and **SALCEDO** have committed the crimes of possession with intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, and conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846.  I therefore request that the Court issue a criminal complaint and arrest warrants for **PEREZ-LOPEZ**, **MARTINEZ-SOLORIO**, and **SALCEDO.**

33.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Paul T. Maloney. AUSA Maloney advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

34.     It is respectfully requested that the Court issue an order sealing all papers submitted in support of the requested criminal complaint and arrest warrant, until further order of the Court. I believe that sealing these documents is necessary because the information contained

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

/S/ Nolan M. Hansen (by telephone)
*In accordance with Fed R. Crim. P. 4.1*
Nolan M. Hansen
Task Force Officer
Federal Bureau of Investigations

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at ___3:45___ a.m/**p.m.** on September __14__, 2024.

/s Jeff Armistead
HONORABLE JEFFREY ARMISTEAD
United States Magistrate Judge

AFFIDAVIT OF NOLAN M. HANSEN                                                         Page 14